## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

SHARYL CARTER,                                    :

                   Plaintiff,

       -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                  Defendant.          :

Case No. 3:09-cv-212

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

===

## REPORT AND RECOMMENDATIONS

===

        Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

        Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g).  The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.  The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury.  *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423.  To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability

determinations.  20 C.F.R. §404.1520.  First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on May 27, 2003, which she amended on November 22, 2004, and which was denied at the reconsideration level. Plaintiff took no further appeal.  (Tr. 69-71; 75-76; 39-42; 44-46).  Plaintiff again filed an application for SSD on October 11, 2005, alleging disability from April 27, 2004, due to  back, neck, shoulder, arm, hand, feet, and lung impairments.  (Tr. 77-81; 187).  Plaintiff's application was denied initially and on reconsideration.  (Tr. 53-55; 57-59).  Administrative Law Judge James Knapp held a hearing, (Tr. 689-723), following which he determined that Plaintiff is not disabled for purposes of the Act.  (Tr. 12-29).  The Appeals Council denied Plaintiff's request for review, (Tr. 8-10),

and Judge Knapp's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Knapp found that she has severe lumbar degenerative disc disease, moderate obesity, and untreated left nondominant hand borderline carpal tunnel syndrome, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (*Id.,* ¶ 3; Tr. 24, ¶ 4). Judge Knapp found further that Plaintiff has the residual functional capacity to perform a reduced range of light work. (Tr. 22, ¶ 5). Judge Knapp then used section 202.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 28, ¶ 10). Judge Knapp concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 29).

The record contains treatment notes from primary care physician, Dr. Fronista-Ward dated February, 1999, through October, 2007. (Tr. 578-647). Those notes reveal that Dr. Fronista-Ward treated Plaintiff for various medical conditions and complaints including chest wall pain, back pain, sciatica, asthma, and allergic rhinitis. *Id.*

Plaintiff attended physical therapy at Miami Valley Hospital from June, 2002, to February, 2003, for treatment of right-sided L5-S1 facet joint arthropathy in her lumbar spine. (Tr. 250-65). When Plaintiff completed that program, the therapist noted she had made "no significant gains" and continued to complain of constant low back pain which she rated as a seven on a scale of one to ten with ten representing the most severe pain. *Id.*

An MRI of Plaintiff's lumbar spine performed in August, 2002, revealed a minimal broad based central bulge at L5-S1 with marked deformity of the right facet and a likely

4

pars defect on the right with severe narrowing of the right neuroforamen and corresponding mild findings on the left. (Tr. 304).

Consulting physician, Dr. Smith noted on April 15, 2003, that the most likely cause of Plaintiff's generalized pain symptoms was fibromyalgia. (Tr. 310-12). Plaintiff underwent sacroiliac joint injections which Dr. Smith performed in May, 2004, and lumbar spine facet injections in June, 2004. (Tr. 288-301).

The record contains a copy of treating rheumatologist Dr. Schriber's office notes dated July 23, 2003, through April 7, 2008. (Tr. 652-65). Those records reveal that in July, 2003, Dr. Schriber identified Plaintiff's diagnoses as polyarthralgia of uncertain cause with possible fibromyalgia syndrome and low back syndrome with an element of degenerative disk disease and spinal stenosis. *Id.* In August, 2003, Dr. Schriber reported that he did not believe that Plaintiff met the musculoskeletal Listing for disability. *Id.* On January 19, 2005, April 20, 2005, March 7, 2006, and April 7, 2008, Dr. Schriber reported that Plaintiff had low back syndrome and polyarthralgia of uncertain cause. *Id*. Dr. Schriber opined that Plaintiff's impairment did not meet the requirements of any musculoskeletal listings. *Id.*

Plaintiff participated in physical therapy at various times from August, 2003 through July, 2007. (Tr. 384-401; 495-513).

Plaintiff underwent electromyographic (EMG) testing and nerve condition studies of the upper extremities in October, 2003, which revealed borderline left carpal tunnel syndrome. (Tr. 472). There was no evidence of carpel tunnel syndrome on the right side. *Id.*

Examining physician, Dr. Greene reported on June 15, 2004, that Plaintiff ambulated with a non-antalgic gait, was able to walk on her heels and toes, demonstrated low

back tenderness, and that her straight leg raising test was negative for radicular symptoms. (Tr. 485-87). Dr. Greene also reported that Plaintiff had a limited range of spinal motion, tenderness in the midline L5-S1 level as well as in the right SI joint, and that her reflexes were hypoactive. *Id.* Dr. Greene identified Plaintiff's diagnoses as chronic low back pain with an exacerbation and opined that based on her history and physical examination, Plaintiff was not able to return to her assembly job at that time. *Id.*

A lumbar spine MRI performed on July 27, 2004, revealed right LS-S1 facet degeneration resulting in osseous neuroforaminal narrowing and impingement of the exiting right LS nerve root, accompanied by LS-S1 disk desiccation and bulging but no evidence of a herniated disc. (Tr. 464-67).

Consulting neurologist Dr. Vandersluis reported in September, 2004, that Plaintiff had fair cervical ranges of movement, marked cervical paraspinal, trapezius and rhomboid tenderness, no carotid bruits, her heart sounds were regular in rate and rhythm, and that she was morbidly obese. (Tr. 316-17). Dr. Vandersluis also reported that Plaintiff's straight leg raise caused some buttock pain on the right side, but that she tolerated full extension, she tolerated hip internal and external rotation, had mild tenderness over the right SI joint which was difficult to localize, and that she had tenderness over the paraspinals diffusely. *Id.* An EMG and needle examination of her lower extremities revealed no electrophysiologic evidence of radiculopathy, plexopathy, neuropathy or myopathy. (Tr. 314-15). Dr. Vandersluis reported in October, 2004, that those results were "unrevealing" and he found no evidence of neurological compromise; he opined that the primary issue might be fibromyalgia. (Tr. 313).

Examining physician Dr. Convery reported on October 8, 2004, that Plaintiff had

6

a slightly decreased range of motion in her lumbar spine, some tightness in the paraspinal muscles, and no specific trigger points.  (Tr. 482-84).  Dr. Convery also reported that Plaintiff's straight leg raising produced some discomfort in the low back at forty-five degrees on the left and thirty degrees on the right but no evidence of radicular symptoms, her reflexes were hypoactive but equal, her strength was good, and that her sensation was symmetrical.  *Id.*  Dr. Convery identified Plaintiff's diagnoses as chronic low back pain with evidence of lumbar sprain and degenerative disc disease and a reported history of nerve root impairment, although he noted that he did not have an MRI to confirm that diagnosis. *Id.*  Dr. Convery opined that Plaintiff could not return to her regular job duties at that time. *Id.*

Consulting neurosurgeon Dr. Africk reported on January 24, 2005, that Plaintiff's gait was normal, her strength was full, her sensation was intact, and that  Patrick's maneuver elicited low back pain suggesting sacroilitis. (Tr. 340-41).  Dr. Africk also reported that she reviewed Plaintiff's July, 2004, MRI, which she stated looked "fine" except for some degenerative changes and some arthritis at the L5-S1 level causing some mild foraminal stenosis. *Id.* Dr. Africk noted that the degree of arthritis would not be causing all of Plaintiff's pain complaints and that there was no basis for surgery.  *Id.*  Dr. Africk identified Plaintiff's diagnoses as low back pain, bilateral hip and leg pain, and paresthesias.  *Id.*

Examining psychologist Dr. Dreyer reported on February 19, 2005, that Plaintiff graduated from high school with honors, had normal speech and thought processes, was cooperative, alert and fully oriented, her mood was unremarkable, her emotional expression was appropriate, and that during the evaluation, she demonstrated no grandiosity, mania, or elevated mood.  (Tr. 333-38).   Dr. Dreyer also reported that Plaintiff did not display any psychomotor

7

agitation or retardation or overt signs of anxiety, her intellectual functioning was average, and

that she appeared to have the information, judgment, and common sense reasoning to live

independently, make important decisions, and manage her finances. *Id.*  Dr. Dreyer identified

Plaintiff's diagnoses as rule out somatoform disorder and  adjustment disorder with anxious and

depressed mood, and she assigned Plaintiff a GAF of 60. *Id.*  Dr. Dreyer opined Plaintiff's

abilities to maintain attention, concentration, persistence and pace, and withstand the stress and

pressures associated with day-to-day work activity were mildly to moderately impaired and her

ability to carry out simple instructions was mildly impaired. *Id.*

       Consulting neurosurgeon Dr. West reported on February 18, 2005, that Plaintiff

had tenderness and a restricted range of motion in her spine, was able to stand on her heels and

toes, and that she had good muscle function. (Tr. 331-32).   Dr. West also reported that Plaintiff

had palpable tenderness on the lower lumbar region, decreased range of motion, and that her

reflexes were 1/4 and equal bilaterally.  *Id.*  Dr. West noted that Plaintiff displayed no unilateral

sensory deficits and that her straight leg raising test was positive at forty-five degrees bilaterally.

*Id.* Dr. West opined that Plaintiff's symptoms were caused by facet arthropathy. *Id.*

       An MRI of Plaintiff's lumbar spine performed on March 10, 2006, revealed

neuroforaminal stenosis on the right at the L5-S1 level secondary to hypertrophic changes and

annulus bulging which represented no change from Plaintiff's July, 2004, MRI. (Tr. 407).

       Examining physician, Dr. Jacobs, reported on May 23, 2006, that Plaintiff had

some low back tenderness, but a full range of motion in her extremities and good trunk mobility.

(Tr. 403-04). Dr. Jacobs also reported that Plaintiff was able to flex without significant

indication of pain, extend her back, and move laterally, and that she had some tenderness in the

paralumbar spinal regions bilaterally.  *Id.*  Dr. Jacobs identified Plaintiff's diagnosis as lumbosacral spondylosis with associated lumbosacral strain and low back pain. *Id.*  Dr. Jacobs opined that Plaintiff could return to her previous work which involved working an eleven-hour shift,  which allowed her the flexibility to sit, stand, and walk throughout her shift, and which involved lifting, carrying, pushing, and pulling up to five pounds.  *Id.*

In September, 2006, Plaintiff began another round of physical therapy and pulmonary rehabilitation, which continued through February, 2007. (Tr. 505-50).  The therapist's notes reveal that initially Plaintiff made progress, but that her status eventually plateaued and she was discharged from therapy. *Id.*   A pulmonary function test performed on November 6, 2006, revealed a very mild degree of restrictive ventilatory defect. (Tr. 445-48).

Plaintiff participated in a functional capacity evaluation in January, 2007.   (Tr. 419-29).  The evaluator reported that Plaintiff had a full range of motion in all extremities and no gross deficits in reflexes or sensory functions and that she had fifty-nine pounds of grip strength in her left hand and fifty-four pounds of grip strength in her right hand.  *Id.*  The evaluator also noted that Plaintiff's pain complaints were inconsistent with her performance on several portions of the evaluation and that she stopped several portions of the evaluation before the objective signs indicated that she could not continue. *Id.*   The evaluator concluded that Plaintiff was able to perform light-level work on a full-time basis. *Id.*

The record contains treatments noted from Dr. Agarwal, dated April 19, 2007 through September 11, 2008. (Tr. 488-94, 667-71).  Those records reveal that Dr. Agarwal treated Plaintiff for various conditions including back pain, chest pain, depression, and hypothyroidism.  *Id.*  On June 11, 2007, Dr. Agarwal reported that Plaintiff could not perform

any work including light sedentary work, any work for which her skills or special training would qualify her, or her regular job, that she would be able to return to her regular job but not within twelve months, that she had been disabled since December 10, 2006, and that she would be able to return to work by July 9, 2007. *Id.* On July 11, 2007, Dr. Agarwal opined that Plaintiff was able to lift and carry up to five pounds, push and pull up to five pounds, stand for up to fifteen to thirty minutes continuously, and that she was required to sit for ninety percent of the time. *Id.* Dr. Agarwal reported on July 12, 2007, that Plaintiff needed to be excused from work from December 10, 2006, through July 15, 2007, would be able to return to work on July 16, 2007, with the restrictions that she should not lift more than five pounds and that she should have a sitting job. *Id.*

An EMG of Plaintiff's lower extremities performed on April 11, 2007, was normal. (Tr. 504). An MRI of Plaintiff's lumbar spine performed on April 11, 2007, revealed mild right neuroforaminal narrowing at L5-S1 secondary to moderate lateral disc bulging and facet degenerative changes, mild facet degenerative changes from L3 through S1, and a very mild broad disc bulge at L4-5. (Tr. 436-37).

Plaintiff participated in physical therapy during the period May 9, 2007, through June 20, 2007, for treatment of displacement of lumbar intervertebral disc without myelopathy. (Tr. 495-503). Plaintiff partially achieved her goals of therapy. *Id.*

Examining physician Dr. Greene reported on June 22, 2007, that Plaintiff's chest wall was diffusely tender over the sternum and over ribs two through five bilaterally to the lateral chest wall along the anterior axillary line and that she had mild tenderness in the right axillary. (Tr. 480-81). Dr. Greene reported further that Plaintiff's manual muscle testing was

10

5/5, she was able to forward flex and abduct her shoulders to one hundred sixty degrees bilaterally, and that palpation of her thyroid gland revealed firmness over the left lateral pole of the thyroid but no tenderness. *Id.* Dr. Greene identified Plaintiff's diagnoses as hyperthyroidism and chest pain. *Id.* Dr. Greene opined that as it pertained solely to the conditions of chest pain and hyperthyroidism, Plaintiff was able to return to her former job without restrictions. *Id.*

Examining physician Dr. Almazan reported on June 27, 2007, that Plaintiff complained of pain with palpation from her neck to her tailbone and that she displayed a decreased range of spinal motion. (Tr. 478-79). Dr. Almazan also reported that Plaintiff complained of pain with straight leg raise on both sides, her motor strength was 5/5 in the lower extremities, her reflexes were diminished bilaterally, she had a normal gait, and that she was able to walk on her heels and toes. *Id.* Dr. Almazan identified Plaintiff's diagnosis as chronic back pain and he opined that Plaintiff was not able to return to her job and that she needed to restrict her activity. *Id.*

Dr. Agarwal reported on January 20, 2008, that in an 8-hour workday, Plaintiff was not able to lift any weight, not even a glass of water, was not able to stand or walk for any length of time, and that she was able to sit for fifteen minutes at a time and for one to two hours in an eight-hour day. (Tr. 648-50). Dr. Agarwal also reported that Plaintiff could never perform postural activities. *Id.* Dr. Agarwal reported further that Plaintiff was impaired in her abilities to reach, handle, feel and push/pull. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to find that her allegations of disabling pain were entirely credible, failing to find that her fibromyalgia is severe impairment, by relying on the VE's testimony which was in response to

11

an improper hypothetical question, and by rejecting her treating physician's opinion. (Doc. 18).

The Court will address Plaintiff's final argument first.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial

_____

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rul 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for

13

discounting the opinions and for explaining precisely how those reasons affected the weight'

given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be

justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social*

*Security.,* 486 F.3d 234, 253 (6ᵗʰ Cir. 2007)(emphasis in original).

> The *Wilson* court instructs that where the ALJ fails to give good
> reasons on the record for according less than controlling weight to
> treating sources, we reverse and remand unless the error is a
> harmless *de minimis* procedural violation. *See Wilson.* 378 F.3d at
> 547. Such harmless error may include the instance where "a
> treating source's opinion is so patently deficient that the
> Commissioner could not possibly credit it," or where the
> Commissioner "has met the goal of ... the procedural safeguard of
> reasons." *Id.* However, the ALJ's failure to follow the Agency's
> procedural rule does not qualify as harmless error where we cannot
> engage in "meaningful review" of the ALJ's decision. *Id.* at 544.

*Blakley,* 581 F.3d at 409.

Judge Knapp declined to give controlling or deferential weight to Dr. Agarwal's

opinions on the bases that they are not well supported by medically acceptable clinical and

laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in

the record. (Tr. 24). Judge Knapp further noted Dr. Agarwal's opinions lacked sufficient

supportability and consistency. *Id.*

As noted above, Dr. Agarwal essentially opined in June, 2007, that Plaintiff could

not perform even sedentary work. (Tr. 492). In 2008, Dr. Agarwal opined that Plaintiff was not

able to lift any weight not even a glass of water, nor was she able to do any standing or walking

or sit for more than one to two hours total in an eight hour workday. (Tr. 648-50). However, as

Judge Knapp noted, Dr. Agarwal's medical notes from March, 2008, to August, 2008 show that

he saw Plaintiff four times for her condition in general and prescribed Vicodin for pain. *Id.*

14

However, his treatment notes contain few, if any clinical findings which support his opinions. Additionally, Dr. Agarwal's opinion is not supported by the objective test results. For example, EMGs of Plaintiff's lower extremities were negative and an EMG of Plaintiff's upper extremities was normal on the right and showed only borderline carpal tunnel syndrome on the left. ((Tr. 314; 504; 472).(Tr. 313, 331-32, 340-41).

Dr. Agarwal's opinion is also inconsistent with the other evidence including the clinical findings reported by consulting Dr. West, Dr. Africk, and Dr. Vandersluis. Finally, Dr. Agarwal's opinion is inconsistent with the reviewing physicians' opinion. (Tr. 320-27, 370-77).

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Agarwal's opinion that Plaintiff is disabled.

Plaintiff argues next that the Commissioner erred in assessing her credibility. In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he or she must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain.

*See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6ᵗʰ Cir. 1991), *citing,*

*Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6ᵗʰ Cir. 1986). Second, the

intensity and persistence of the alleged pain are evaluated by considering all of the relevant

evidence. *See, Jones,* 945 F.2d at 1366-70.

   Although he determined that Plaintiff has  severe lumbar degenerative disc

disease, moderate obesity, and untreated left nondominant hand borderline carpal tunnel

syndrome, Judge Knapp determined that Plaintiff's complaints of disabling pain and limitations

were not entirely credible essentially because they are not supported by the record. (Tr. 25-26).

   For the same reasons that the Commissioner had an adequate basis for rejecting

Dr. Agarwal's opinion, the Commissioner had an adequate basis for rejecting Plaintiff's

subjective complaints and allegations of disabling pain.  That is, the relatively mild clinical

findings and objective test results of record do not support Plaintiff's allegations.  Accordingly,

the Commissioner did not err by rejecting Plaintiff's allegations of disabling pain.

    Plaintiff also essentially argues that the Commissioner erred by failing to find

that her alleged fibromyalgia is a severe impairment.

   An impairment can be considered as not severe only if the impairment is a "slight

abnormality" which has such a minimal effect on the individual that it would not be expected to

interfere with the individual's ability to work, irrespective of age, education, and work

experience.  *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6ᵗʰ Cir.

1985)(citation omitted);  *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).   The Sixth Circuit

has recognized that  fibromyalgia can be  a  severe  impairment and that, unlike medical

conditions that can be confirmed by objective testing, fibromyalgia patients present no

objectively alarming signs. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 243, (6th Cir. 2007), citing *Preston v. Secretary of Health & Human Services,* 854 F.2d 815, 820 (6th Cir. 1988)(per curiam). Fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion. *Rogers, supra.* The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* (citation omitted).

Plaintiff argues that Judge Knapp's findings were based solely upon the reports from a rheumatologist, Dr. Schriber. Plaintiff contends that Dr. Schriber indicated twice that he believed that Plaintiff was suffering from fibromyalgia. However, a review of Dr. Schriber's treatment notes reveals that Dr. Schriber diagnosed Plaintiff with polyarthralgia of uncertain cause with possible fibromyalgia syndrome and low back syndrome, with an element of degenerative disk disease and spinal stenosis. (Tr. 664). On August 27, 2003, January 19, 2005, April 20, 2005, March 7, 2006, and April 7, 2008, Dr. Schriber reported that Plaintiff had low back syndrome and polyarthralgia of uncertain cause. (Tr. 652-56, 661). Dr. Schriber did not document any trigger or tender points.

The Commissioner does not commit reversible error in finding a non-severe impairment where he determines that a claimant has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation, since the Commissioner considers all impairments, including non-severe impairments, in determining residual functional capacity to perform work activities. *See, Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987). Because the Commissioner determined that Plaintiff has other severe

17

impairments and went on with the remaining steps in the disability evaluation process, the Commissioner did not commit reversible error by failing to find that Plaintiff's alleged fibromyalgia is a severe impairment.

Under these circumstances, the Commissioner did not err by failing to find that Plaintiff has severe fibromyalgia.

Plaintiff's final challenge to the Commissioner's decision is that he erred by relying on the VE's testimony because it was in response to an improper hypothetical question. Plaintiff's position is that Judge Knapp failed to address the questions put to the VE by Plaintiff's counsel, specifically with regard to absences from work or limitations in maintaining attention, concentration, persistence and pace due to pain, to which the VE responded that such an individual would not be able to maintain employment. Plaintiff further argues that Judge Knapp's hypothetical did not accurately reflect Plaintiff's actual limitations.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

18

Judge Knapp determined that Plaintiff did not have a severe or functionally limiting depressive disorder. (Tr. 21). Judge Knapp based his decision on reviewing physician's assessment that Plaintiff did not have a severe mental impairment (Tr. 342). Judge Knapp further found that there was a lack of mental health treatment, significant psychiatric symptoms, or objective evidence of significant depression. (Tr. 21). This Court agrees with Judge Knapp's evaluation of any alleged mental impairment.

As noted above, Dr. Dreyer found that Plaintiff was cooperative and oriented, had a normal mood and emotional expression, and no overt signs of anxiety, grandiosity, mania, or elevated mood. (Tr. 337). In addition, as Judge Knapp noted, the reviewing psychologist determined that Plaintiff does not have a severe mental impairment. Further, although Dr. Agarwal indicated in some of his office notes that Plaintiff's diagnoses included depression, *see, e.g.,* Tr. 668, 669, those records fail to reflect that Dr. Agarwal specifically treated any alleged depression with medication nor did Dr. Agarwal refer Plaintiff for mental health treatment. Because Judge Knapp had an adequate basis for not finding that Plaintiff suffers from depression and/or anxiety, he was not required to include in the hypothetical question to the VE any mental impairment limitations. Accordingly, the Commissioner did not err by relying on the VE's testimony in determining that Plaintiff is not disabled.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v.*

19

*Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

June 18, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

20